UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JOHN DeROSSI
             Plaintiff,

        -against-

NATIONAL LOSS MANAGEMENT,
NATIONAL MARINE UNDERWRITERS, INC.,
and HANOVER INSURANCE COMPANY
             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 3:02CV247(JCH)

February 24, 2004

**DEFENDANTS NATIONAL LOSS MANAGEMENT, NATIONAL MARINE
UNDERWRITERS, INC. AND HANOVER INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

Dated: Easton, Connecticut
      February 24, 2004

LOVEJOY & ASSOCIATES
Attorneys for Defendants,
National Loss Management,
National Marine Underwriters, Inc.
and Hanover Insurance Company
P.O. Box 56
Easton, Connecticut 06612
(203) 459-9941
(203) 459-9943 (telefax)

ORAL ARGUMENT REQUESTED
TESTIMONY NOT REQUIRED

# TABLE OF CONTENTS

**Page**

DEFENDANTS NATIONAL LOSS MANAGEMENT, NATIONAL MARINE
UNDERWRITERS, INC. AND HANOVER INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT ................................................. 1

STATEMENT OF FACTS ......................................................................... 1

LEGAL ARGUMENT ............................................................................... 2

POINT I ..................................................................................................... 2

FEDERAL ADMIRALTY/MARITIME LAW PREEMPTION ................. 2

POINT II .................................................................................................... 4

PLAINTIFF JOHN DeROSSI'S CAUSE OF ACTION FOR "CUTPA" VIOLATIONS
MUST BE DISMISSED AS NOT COGNIZABLE UNDER ADMIRALTY LAW .............. 4

POINT III ................................................................................................... 7

PUNITIVE DAMAGES ARE GENERALLY NOT RECOVERABLE IN ADMIRALTY,
THUS "CUTPA'S" PUNITIVE DAMAGES PROVISION IS PREEMPTED BY
ESTABLISHED ADMIRALTY LAW. ADDITIONALLY, "CUTPA'S" PUNITIVE
DAMAGES PROVISION ALLOWS A DIFFERENT STANDARD OF PROOF (LOWER)
THAN IN ADMIRALTY AND THUS SHOULD BE PREEMPTED ON THAT
BASIS AS WELL .......................................................................................... 7

POINT IV .................................................................................................... 10

PLAINTIFF JOHN DeROSSI MAY NOT BRING A PRIVATE CAUSE OF
ACTION PURSUANT TO THE CONNECTICUT UNFAIR INSURANCE
PRACTICES ACT ("CUIPA"), THUS THE COURT MUST GRANT
SUMMARY JUDGMENT ON THAT CLAIM ............................................ 10

POINT V ..................................................................................................... 10

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF
JOHN DeROSSI'S "CUIPA" AND "CUTPA" CLAIMS SHOULD BE GRANTED
BECAUSE THEY FAIL TO MEET THE REQUISITES ESTABLISHED BY
CONNECTICUT CASE LAW ..................................................................... 10

POINT VI ................................................................................................ 11

SECOND, FOURTH, FIFTH, SEVENTH AND EIGHTH COUNTS BASED ON
EQUITABLE ESTOPPEL AND/OR BAD FAITH ARE BARRED BY THE SUIT
TIME PROVISIONS OF THE MARINE INSURANCE CONTRACT AND/OR SUIT
TIME PROVISIONS AGREED TO THE PARTIES SUBSEQUENT TO THE LOSS ......... 11

POINT VII ............................................................................................... 14

NO CAUSE OF ACTION LIES AGAINST DEFENDANTS NATIONAL MARINE
UNDERWRITERS, INC. AND HANOVER INSURANCE COMPANY, AS THEY HAD
NO INVOLVEMENT IN THE ACTIONS COMPLAINED OF BY PLAINTIFF JOHN
DeROSSI, THUS THEY SHOULD BE DISMISSED AS DEFENDANTS IN THIS
ACTION .................................................................................................. 14

POINT VIII .............................................................................................. 14

DEFENDANTS, NATIONAL LOSS MANAGEMENT, NATIONAL
MARINE UNDERWRITERS, INC., AND HANOVER INSURANCE COMPANY'S
EVIDENCE IS SUFFICIENT TO SUPPORT THEIR MOTION FOR SUMMARY
JUDGMENT; THE STANDARDS FOR SUMMARY JUDGMENT HAVE BEEN MET ... 14

CONCLUSION ......................................................................................... 16

DeRossiTOC.doc

## TABLE OF AUTHORITIES

**CASES:**                                                                    **Page**

Allessa v. Allstate Insurance Co., Superior Court, judicial district of Ansonia/Milford
at Milford, No. 050550 (November 7, 1995) (Skolnick, J.) ...................................................  9

Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975) ...............................  4

American National Fire Insurance Co. v. Kenealy, 72 F.2d 264 (2d Cir. 1995) .......................  6

Anderson v. Liberty Lobby, 477 U.S. 242 (1986) ..........................................................  15

Andrew Rocco v. Continental Insurance Company, CV-99-0171669-S (X05),
November 22, 2002 (Complex Litigation Docket) ..................................................................  9

B.P. North America Trading, Inc. v. Panomax Nova, 784 F.2d 975,
1986 AMC 1773 (9th Cir. 1986) ..........................................................................................  6

Bernard v. Bernard, 214 Conn. 99 (1990) ............................................................................  12

Brothers v. American Home Assurance Co., Superior Court, Judicial District of New
Haven at New Haven, No. 364725 (August 25, 1995) (Hartmere J., 15 Conn. L. Rptr. 4)...  9

C&M Technology, Inc. v. Travelers Insurance Co., Superior Court, Judicial District of
Middlesex at Middletown, No. 072968 (April 5, 1995) (Stanley, J.,
14 Conn. L. Rptr. 32) ...........................................................................................................  9

Cantieri Novali Riuniti v. M/V Skyptron, 802 F.2d 160, 1997 AMC 463 (5th Cir. 1986) ....  6

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ......................................................................  14

Chambers v. Manning, 169 F.R.D. 5 (D.Conn. 1996) ..........................................................  12

DeLong Corporation v. Raymond International, Inc., 622 F.2d 1135 (3d Cir. 1980) ..............  15

Delta Marine, Inc. v. Whaley, 813 F.Supp. 414 (E.D.N.C. 1993) .........................................  4

F.D. Rich Co. v. United States, 417 U.S. 116 (1974) ............................................................  4,6

Galveston County Nav. Dist. V. Hopson Towing Co., Inc., 92 F.3d 353,
1996 AMC 2850 (5th Cir. 1996) ...........................................................................................  6

Garan v. M/V Aivik, 1995 AMC 2657 (S.D. Fla. 1995) .......................................................  5

Gebbie v. Cadle Company, 49 Conn. App. 265 (1998) .........................................................  9

Gonzalez v. Lewis Services, Inc., Superior Court, Judicial District of New Haven at
Meriden, No. 245151 (March 31, 1995) (Silbert, J.) ................................................... 9

Goodman v. 1973 26 Foot Trojan Vessel, 859 F.2d 71 (8th Cir. 1988) ........................... 6

Guevara v. Maritime Overseas Corp., 59 F.3d 1496 (5th Cir. 1995) ............................. 7

In re: Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama, on
September 22, 1993 v. Warrior & Gulf Navigation Company,
121 F.3d 1421 (11th Cir. 1997) .................................................................................. 7

Ingram Barge Co. v. Trifinery, Inc., 1991 A.M.C. 1450 ............................................... 4

Kalmbach, Inc. v. Ins. Co. of the State of Pennsylvania, 422 F. Supp. 44 (D. Ak. 1976),
on remand from 529 F.2d 552 (9th Cir. 1976) ............................................................ 5

Knight v. U.S. Fire Insurance Co., 804 F.2d 9 (2d Cir. 1986), cert. denied,
480 U.S. 932 (1987) .................................................................................................. 15

Kossick v. United Fruit Co., 365 U.S. 371 (1961); ...................................................... 9

L.G. Defelice, Inc. v. Fireman's Insurance Company, 41 F.Supp. 2d 152
(D. Conn. 1998) ........................................................................................................ 9

Lees v. Middlesex Insurance Company, 219 Conn. 644, 594 A.2d 952 (1991) .................. 11

McCormick v. New Hampshire Insurance, Superior Court, Judicial District of
Middlesex at Middletown, No. 075615 (March 13, 1996) (Stanley, J.) .......................... 9

Mead v. Burns, 199 Conn. 651, 509 A.2d 11 (1986) ................................................... 11

Noritake Co., Inc. v. M/V Hellenic Champion, 627 F.2d 724, 1982 AMC 172
(5th Cir. 1980) ........................................................................................................... 6

Norwalk Cove Marina, Inc. v. S/V ODYSSEUS, 90 F.Supp. 190 (D. Conn. 2000) ............. 8

Offshore Logistics Inc. v. Tallentire, 477 U.S. 207 (1986) ........................................... 3,9

Panama R. Co. v. Vasquez, 271 U.S. 557 (1926) ....................................................... 3,9

Saccente v. Town of Rocky Hill, Superior Court, Judicial District of Hartford/
New Britain at Hartford, No. 529219 (January 23, 1995)
(Wagner, J., 13 Conn. L. Rptr. 382) .......................................................................... 9

Sosebee v. Rath, 893 F.2d 54 (3d Cir. 1990) ............................................................. 4,6

2

Southworth Machinery Co., Inc. v. F/V Corey Pride, 994 F.2d 37 (1st Cir. 1993),................... 5,6

Stabell v. Prudential Insurance Co., Superior Court, Judicial District of Fairfield at
Bridgeport, No. 319568 (August 4, 1995) (Freedman, J.)..................................................... 9

Sturman v. Socha, 191 Conn. 1 (1983)................................................................. 12

Ubysz v. DiPietro, 185 Conn. 47 (1981) .............................................................. 12

Vaughan v. Atkinson, 369 U.S. 527, 1962 AMC 1131 (1962) .............................................. 6

## FEDERAL RULES OF CIVIL PROCEDURE:

Fed. R. Civ. P. Rule 56............................................................................... 1,15

## TREATISES:

Gilmore & Black, The Law of Admiralty, §1-13 (2d. Ed. 1975) ........................................... 3,9

T. Schoenbaum, Admiralty and Maritime Law (2d Ed. 1994) .............................................. 3

D. Robertson, "Court-Awarded Attorneys' Fees in Maritime Cases: The "American Rule"
in Admiralty," 27 J. Mar. L.&C. 507 (1996) ........................................................... 6

DeRossiTOA.doc

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JOHN DeROSSI

              Plaintiff,

                                     Case No. 3:02CV247(JCH)

    -against-

NATIONAL LOSS MANAGEMENT,             February 24, 2004
NATIONAL MARINE UNDERWRITERS, INC.,
and HANOVER INSURANCE COMPANY
              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DEFENDANTS NATIONAL LOSS MANAGEMENT, NATIONAL MARINE
UNDERWRITERS, INC. AND HANOVER INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT

NOW COME defendants National Loss Management, National Marine Underwriters, Inc., and Hanover Insurance Company, and move this Court, pursuant to Fed.R.Civ.P. Rule 56, to dismiss plaintiff John DeRossi's claims, because: 1) the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA") are not cognizable in admiralty; i.e., established maritime law prevents "CUTPA" claims, 2) there exists no private "CUIPA" cause of action, 3) the claims are time barred by the limitations period contained in the marine insurance contract or amendments made thereto by parties, and 4) defendants National Marine Underwriters and Hanover Insurance Company were not a party to the actions complained of by plaintiff John DeRossi, and therefore no cause of action exists against these defendants.

STATEMENT OF FACTS

On or about September 21, 1999, over four (4) years ago, the plaintiff John DeRossi's vessel sustained damages by submersion in freshwater at Lake George, New York. At that time,

the defendants had a qualified marine surveyor examine the DeRossi vessel. Thereafter, based on a survey conducted by Mr. Raymond Wolf, the underwriter paid to plaintiff John DeRossi the sum of $10,465.61 on November 5, 1999, which plaintiff John DeRossi accepted in settlement of his claim.

Thereafter, in June 2000, plaintiff John DeRossi again contacted defendant National Loss Management with an additional claim in the sum of approximately $10,000.00, which he claimed also resulted from the September 21, 1999 submersion. Although defendant National Loss Management has requested information as to whether or not plaintiff John DeRossi had his vessel repaired during the period of September 1999 to June 2000, plaintiff John DeRossi has refused to produce the documents requested by defendant National Loss Management; i.e., he has refused to cooperate in the investigation of his claim as required by the terms and conditions of the marine insurance policy/contract. Following the second claim, defendant National Loss Management instructed Capt. David A. Page, a certified marine surveyor, to determine whether or not the second claim resulted from the September 21, 1999 submersion. It was Capt. Page's professional opinion that the second loss/claim was not a result of the submersion of plaintiff John DeRossi's vessel, which had occurred some eight (8) months prior to the second loss/claim.

## LEGAL ARGUMENT

### POINT I

### FEDERAL ADMIRALTY/MARITIME LAW PREEMPTION

This is a case of admiralty/maritime law, brought pursuant to the "savings to suitors" clause, and as such must be governed by federal admiralty/maritime law (i.e. state law is preempted).

2

It was long ago held that whether or not a party sues in admiralty, diversity or pursuant to the "savings to suitors" clause in <u>state court, the court which hears the suit is bound to apply substantive admiralty law principles including admiralty preemption principles</u>. See: <u>Offshore Logistics Inc. v. Tallentire</u>, 477 U.S. 207, 223 (1986) ("state courts [may] entertain in personam maritime causes of action, but in such cases . . . the substantive remedies afforded by the States <u>must conform to federal maritime standards</u>"); <u>Panama R. Co. v. Vasquez</u>, 271 U.S. 557, 560-61 (1926). <u>See</u>: Gilmore & Black, <u>The Law of Admiralty</u>, §1-13 (2d. Ed. 1975).

In T. Schoenbaum, <u>Admiralty and Maritime Law</u> (2d Ed. 1994), a leading authority on admiralty law, its author states:

> Preemption in admiralty is similar to this familiar preemption analysis but with several unique characteristics.
> First, admiralty is characterized by both federal statutory law and judicially-created general maritime law. In the case of a conflict between the two, it is the statutory law that prevails. Thus, admiralty recognizes "horizontal" preemption of the federal general maritime law by federal statutory law.
> <u>A second distinctive feature of admiralty preemption is that the judge-made general maritime law, when in conflict with state law, is supreme. Therefore, established rules of the general maritime law may override state statutory and decisional law just as do acts of Congress</u>.
> Preemption in admiralty embraces not only the traditional concepts of preemption, but also other considerations.

<u>Id</u>. at § 4-5, pp. 155-56 (footnotes omitted)(emphasis added)

Because some of the remedies that plaintiff John DeRossi seeks by way of state statutes/remedies directly conflict with the long-established remedies afforded by federal maritime/admiralty law, they must be stricken. Simply put, they are preempted by federal maritime/admiralty law and/or violate the federal maritime doctrine of uniformity and as such are not cognizable herein.

3

POINT II

### PLAINTIFF JOHN DeROSSI'S CAUSE OF ACTION FOR "CUTPA" VIOLATIONS MUST BE DISMISSED AS NOT COGNIZABLE UNDER ADMIRALTY LAW

Plaintiff John DeRossi's claims for "CUTPA" damages pursuant to Sec. 42-110g C.G.S., i.e., discretionary punitive damages, costs and attorney's fees, are precluded in this maritime case. Under the general maritime law, punitive damages are recoverable only in tort cases, not in contract cases. In Delta Marine, Inc. v. Whaley, 813 F.Supp. 414 (E.D.N.C. 1993), plaintiff's claim for treble damages under North Carolina's Unfair and Deceptive Trade Practices Act, which is punitive in nature, was dismissed in that admiralty case, because it was held to conflict with the general maritime law principles governing punitive damages. The Court in Delta Marine stated:

> Where a conflict between state and judicially established admiralty law exists, the state law must yield to admiralty just as if the admiralty law had been codified by an Act of Congress. Wilburn Boat Co. v. Fireman's Ins. Co., 348 U.S. 310, 314, 99L.Ed. 337, 75 S.Ct. 368 (1954). Substantive state remedies also must conform to federal maritime standards. Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 223, 106 S. Ct. 2485, 91 L. Ed. 2d 174 (1986). The court must now decide whether a judicially established admiralty standard governs punitive damages, and, if so, does it conflict with Chapter 75? This court answers both of these issues affirmatively.

Id. at 415. (emphasis added) See also: Ingram Barge Co. v. Trifinery, Inc., 1991 A.M.C. 1450

Under the general maritime law, the "American Rule" as to attorney's fees applies, namely, that the prevailing party in Federal Court litigation, based on admiralty jurisdiction, generally cannot recover attorney's fees. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975). While the Court does have the power to award attorney's fees to a successful litigate when his opponent has commenced or conducted an action in bad faith, vexatiously, wantonly, or for oppressive reasons, F.D. Rich Co. v. United States, 417 U.S. 116, 129 (1974), the plaintiff, however, cannot recover attorney's fees under Sec. 42-110g C.G.S. of CUTPA herein. In Sosebee v. Rath, 893 F.2d 54 (3d Cir. 1990), the Virgin Island's statutory provisions governing attorney's fees

4

and witness costs were held to be pre-empted by general maritime law principles and as such, attorney's fees, et cetera, were held not to be recoverable.

Moreover, in Southworth Machinery Co., Inc. v. F/V Corey Pride, 994 F.2d 37 (1st Cir. 1993), the general maritime rule of law, relating to attorney's fees and disbursements; i.e., that they are not recoverable, was again found to preclude the application of Massachusetts Consumers Protection Act, which allowed for the recovery of attorney's fees.

The courts have consistently held that attorneys' fees are not recoverable under admiralty law, thus "CUTPA's" attorney fee provision conflicts with long established federal admiralty law and may not be applied herein.

In Garan v. M/V Aivik, 1995 AMC 2657 (S.D. Fla. 1995), the court held:

> The Florida statue conflicts with the American rule set forth in federal common law as the Florida substantive rule impermissibly imposes an additional obligation on the parties in direct conflict with long-standing federal maritime common law.
>      While Defendant argues that courts have increasingly applied state law as a supplement to the federal maritime law, such applications are only valid when federal statutory or common law is silent on the issue. See e.g. Wilburn Boat Co. v. Fireman's Fund Insur. Co., 348 U.S. 310, 1955 AMC 467 (1955). The federal law regarding the award of attorneys' fees in the maritime context is clear and directs each side to pay its own fees.

(emphasis added)

Moreover, in Kalmbach, Inc. v. Ins. Co. of the State of Pennsylvania, 422 F. Supp. 44 (D. Ak. 1976), on remand from 529 F.2d 552 (9th Cir. 1976), the Court held that even if a case otherwise within admiralty originated in state court under the savings to suitors clause but was transferred to federal court, state law may not be applied in an admiralty case if it would defeat or narrow any substantial admiralty rights of recovery (specifically, Alaska Civil Rule 82 conflicts with the substantive rule of admiralty that ordinarily attorney fees are not recoverable by the prevailing party).

See: Vaughan v. Atkinson, 369 U.S. 527, 1962 AMC 1131 (1962); Galveston County Nav. Dist. V. Hopson Towing Co., Inc., 92 F.3d 353, 1996 AMC 2850 (5th Cir. 1996); F.D. Rich Co. v. United States, 417 U.S. 116 (1974); Goodman v. 1973 26 Foot Trojan Vessel, 859 F.2d 71 (8th Cir. 1988); B.P. North America Trading, Inc. v. Panomax Nova, 784 F.2d 975, 1986 AMC 1773 (9th Cir. 1986); Cantieri Novali Riuniti v. M/V Skyptron, 802 F.2d 160, 1997 AMC 463 (5th Cir. 1986); Noritake Co., Inc. v. M/V Hellenic Champion, 627 F.2d 724, 1982 AMC 172 (5th Cir. 1980); See also: D. Robertson, "Court-Awarded Attorneys' Fees in Maritime Cases: The "American Rule" in Admiralty," 27 J. Mar. L.&C. 507 (1996).

Finally, the Second Circuit Court of Appeals has adopted the holdings in Southworth Machinery Co. and Sosebee. The Second Circuit Court of Appeals stated in American National Fire Insurance Co. v. Kenealy, 72 F.2d 264, 270-71 (2d Cir. 1995)

> We disagree. While Ingersoll did not specifically [**21] examine cases brought by insurance companies, it stated the federal prohibition against attorneys' fees in admiralty suits in the broadest of terms. It did not temper its holding by suggesting that a different rule would apply if the insurance company brought the action. We believe that our holding in Ingersoll suffices to "establish" a federal admiralty rule, which now must be followed instead of state law. See *Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 223, 91 L.Ed. 2d 174, 106 S. Ct. 2485 (1986)* ("The extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse-Erie' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards."); *Galt G/S v. Hapag-Lloyd AG, 60 F.3d 1370, 1373 n.1 [*271] (9th Cir. 1995)* (same); *Mentor Ins. Co. v. Brannkasse, 996 F.2d 506, 513 (2d. Cir. 1993)* ("In admiralty cases, federal maritime law applies where it exists.")
>
> *  *  *
>
> We agree with Southworth and Sosebee, and see no reason (nor do the Kenealys provide us with any) to limit Ingersoll.

(emphasis added)

Accordingly, this Court should dismiss/strike defendant John DeRossi's Cause of Action based on the "CUTPA."

## POINT III

PUNITIVE DAMAGES ARE GENERALLY NOT RECOVERABLE IN ADMIRALTY,
THUS "CUTPA'S" PUNITIVE DAMAGES PROVISION IS PREEMPTED BY
ESTABLISHED ADMIRALTY LAW. ADDITIONALLY, "CUTPA'S" PUNITIVE
DAMAGES PROVISION ALLOWS A DIFFERENT STANDARD OF PROOF (LOWER)
THAN IN ADMIRALTY AND THUS SHOULD BE PREEMPTED ON THAT BASIS AS WELL

In In re: Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993 v. Warrior & Gulf Navigation Company, 121 F.3d 1421 (11th Cir. 1997), the Eleventh Circuit Court of Appeals reversed the District Court's holding that an Alabama statute, which allowed for a finding of punitive damages based on simply negligence, was not applicable to the admiralty case therein, because the standard of proof conflicted with federal maritime/admiralty law and thus was subject to the preemption doctrine.

Additionally, the Fifth Circuit Court of Appeals sitting, en banc, in Guevara v. Maritime Overseas Corp., 59 F.3d 1496 (5th Cir. 1995), stated the following with respect to the availability of punitive damages in admiralty:

> We reheard this case en banc to reconsider our 1984 decision in *Holmes v. J. Ray McDermott & Co., 734 F.2d 1110 (5th Cir. 1984)*, that an award of punitive damages under the general maritime law may be made when an employer willfully and callously refuses to pay maintenance or cure to an injured seaman. Developments in the law since 1984 have caused us to reevaluate the basis for such a punitive award and to conclude that Holmes should be overruled.
>
> \* \* \*
>
> Our Holmes precedent for the availability of punitive damages in maintenance and cure cases is no longer well-founded. In particular, the advent of Miles brings about significant changes in the admiralty that we cannot ignore.
>
> \* \* \*
>
> However, when we couple the weakened foundation of Holmes with our understanding of the Miles uniformity principle, we are persuaded that punitive damages should no longer be available in cases of willful nonpayment of maintenance and cure under the general maritime law. To this extent, therefore, Holmes is overruled. The district court's judgment is REVERSED insofar as it awarded punitive damages to Guevara for the willful failure to pay maintenance, but in all other respects, the judgment of the district court is AFFIRMED.

(emphasis added)

7

In a case directly on point which involved the applicability of "CUTPA" claims, the United States District Court for the District of Connecticut, Judge Eginton, held in Norwalk Cove Marina, Inc. v. S/V ODYSSEUS, 90 F.Supp. 190, 191-193 (D. Conn. 2000), as follows:

> Norwalk Cove and Clarke argue that CUTPA, which provides for attorneys' fees and punitive damages, is not cognizable in admiralty law. Defendants counter that the claim has been properly asserted.
>
> There is a strong interest in maintaining uniformity in maritime law. See *Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409-10, 98 L.Ed. 143, 74 Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409-10, 98 L.Ed. 143, 74 S. Ct. 202 (1933).* Where a conflict arises between a state statute and judicially established admiralty law, the state law must yield to admiralty as if the admiralty law had been codified by an Act of Congress. See *Wilburn Boat Co. v. Fireman's Insurance Co., 348 U.S. 310, 314, 99 L.Ed.337, 75 S.Ct. 368 (1954).*
>
> Plaintiffs election to sue in admiralty binds the parties to the principles of admiralty law. See *Camrex (Holdings) Ltd. v. Camrex Reliance Paint Company, Inc., 90 F.R.D. 313, 317 (S.D.N.Y. 1981).* Even though the Emerald Lady and Mehiel assert their counterclaims/cross claims in personam pursuant to diversity jurisdiction, any state law remedies must conform to federal maritime standards. *Offshore Logistics v. Tallentire, 477 U.S. 207, 222, 91 L.Ed. 2d 174, 106 S.Ct. 2485 (1986).*
>
> Admiralty law applies the "American Rule" as to attorneys' fees. *Gradman & Holler GMBH v. Continental Lines, S.A., 679 F.2d 272, 273-4 (1ˢᵗ Cir. 1982).* Therefore, the Court has discretion to award attorneys' fees upon a showing that opposing counsel has commenced or conducted an action in bad faith, vexatiously or for oppressive reasons. See *F.D. Rich Co. v. United States ex ret. Industrial Lumber Co., 417 U.S. 116, 129 40 L.Ed. 2d 703, 94 S. Ct. 2157 (1974).*
>
> The Court may award punitive damages where a defendant's actions were intentional, deliberate, grossly negligently, or so wanton and reckless as to demonstrate a conscious disregard for the rights of others. *Murciore v. M/S Scotia Prince, 845 F.2d 347, 354 (1ˢᵗ Cir. 1988); Miles v. Melrose, 882 F.2d 976, 989 (5ᵗʰ Cir. 1989).*
>
> CUTPA allows for an award of attorneys' fees and punitive damages upon proof of an unfair trade practice. A practice is considered an unfair practice if it (1) offends public policy, 2) is immoral, unethical, oppressive, or unscrupulous, or 3) causes substantial injury to consumers. *Willow Springs Condominium*

*Association, Inc. v. 7th BRT Development Corp.*, 245 Conn. 1, 43, 717 A.2d 77 (1998).

Accordingly, CUTPA allows for the award of attorney's fees and punitive damages without meeting the standards established for such awards in admiralty law. Since CUTPA conflicts with admiralty law, the CUTPA claim will be dismissed. See *Sosebes v. Rath, 893 F.2d 54, 57 (3d Cir. 1990)* (where a case arises under the federal maritime law, a local statute awarding attorneys' fees should <u>not</u> be applied). (emphasis added)[1]

Moreover, in <u>Andrew Rocco v. Continental Insurance Company</u>, CV-99-0171669-S (X05), November 22, 2002 (Complex Litigation Docket), Judge Chase Rogers struck the plaintiff's "CUTPA" claim as being preempted by federal maritime law. (See Exhibit A attached hereto – highlighting ours) Additionally, Judge Rogers struck plaintiff Andrew Rocco's "CUIPA" claims because established Connecticut precedent holds that there is no private "CUIPA" cause of action.

Finally, whether or not a party sues in admiralty, diversity or pursuant to the "savings to suitors" clause in state court, the court which is hearing the suit is bound to apply substantive admiralty law principles including admiralty preemption principles. See: <u>Offshore Logistics Inc. v. Tallentire</u>, 477 U.S. 207, 223 (1986) ("state courts [may] entertain <u>in personam</u> maritime causes of action, but in such cases . . . the substantive remedies afforded by the States <u>must conform to federal maritime standards</u>"); <u>Kossick v. United Fruit Co.</u>, 365 U.S. 371 (1961); <u>Panama R. Co. v. Vasquez</u>, 271 U.S. 557, 560-61 (1926). <u>See</u>: Gilmore & Black, <u>The Law of Admiralty</u>, § 1-13 (2d. Ed. 1975).

---

[1] By way of example, intent need not be demonstrated to succeed on a "CUTPA" claim as opposed to the requirement that a plaintiff establish that a defendant breached the duty of reasonable care threshold in admiralty. See: <u>L.G. Defelice, Inc. v. Fireman's Insurance Company</u>, 41 F.Supp. 2d 152 (D. Conn. 1998); <u>Gebbie v. Cadle Company</u>, 49 Conn. App. 265 (1998)

POINT IV

PLAINTIFF JOHN DeROSSI MAY NOT BRING A PRIVATE CAUSE OF ACTION
PURSUANT TO THE CONNECTICUT UNFAIR INSURANCE PRACTICES ACT ("CUIPA"),
THUS THE COURT MUST GRANT SUMMARY JUDGMENT ON THAT CLAIM

The majority of courts in the State of Connecticut that have addressed the issue have held

that no private cause of action exists pursuant to "CUIPA".

The courts in the following cases have held that no implied private cause of action exists

under "CUIPA:" McCormick v. New Hampshire Insurance, Superior Court, judicial district of

Middlesex at Middletown, No. 075615 (March 13, 1996) (Stanley, J.); Allessa v. Allstate

Insurance Co., Superior Court, judicial district of Ansonia/Milford at Milford, No. 050550

(November 7, 1995) (Skolnick, J.); Brothers v. American Home Assurance Co., Superior Court,

judicial district of New Haven at New Haven, No. 364725 (August 25, 1995) (Hartmere J., 15

Conn. L. Rptr. 4); Stabell v. Prudential Insurance Co., Superior Court, judicial district of

Fairfield at Bridgeport, No. 319568 (August 4, 1995) (Freedman, J.); C&M Technology, Inc. v.

Travelers Insurance Co., Superior Court, judicial district of Middlesex at Middletown, No.

072968 (April 5, 1995) (Stanley, J., 14 Conn. L. Rptr. 32); Gonzalez v. Lewis Services, Inc.,

Superior Court, judicial district of New Haven at Meriden, No. 245151 (March 31, 1995)

(Silbert, J.); Saccente v. Town of Rocky Hill, Superior Court, judicial district of Hartford/New

Britain at Hartford, No. 529219 (January 23, 1995) (Wagner, J., 13 Conn. L. Rptr. 382).

POINT V

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF
JOHN DeROSSI'S "CUIPA" AND "CUTPA" CLAIMS SHOULD BE GRANTED
BECAUSE THEY FAIL TO MEET THE REQUISITES ESTABLISHED BY
CONNECTICUT CASE LAW

A plaintiff may bring a private cause of action under "CUTPA" on an insurance contract,

only if the alleged misconduct of the underwriter amounts to a violation of "CUIPA". Because

10

the plaintiff John DeRossi had no dealings with either defendant National Marine Underwriters, Inc. or defendant Hanover Insurance Company, its "CUTPA" claim fails to meet the threshold requirements of a viable "CUIPA"/"CUTPA" claim and summary judgment should be granted as to plaintiff John DeRossi's claims against defendants National Marine Underwriters, Inc. and Hanover Insurance Company.

Lees v. Middlesex Insurance Company, 219 Conn. 644, 654, 594 A.2d 952 (1991); Mead v. Burns, 199 Conn. 651, 666, 509 A.2d 11 (1986)

Moreover, because the only defendant that plaintiff John DeRossi dealt with in respect to the claims handling process was defendant National Loss Management, and plaintiff John DeRossi could not allege a pattern of violations against defendant National Loss Management, he voluntarily withdrew his "CUTPA" and "CUIPA" claim against the same. (See Count Six of plaintiff John DeRossi's Amended Complaint, dated May 28, 2003).

POINT VI

SECOND, FOURTH, FIFTH, SEVENTH AND EIGHTH COUNTS BASED ON
EQUITABLE ESTOPPEL AND/OR BAD FAITH ARE BARRED BY THE SUIT
TIME PROVISIONS OF THE MARINE INSURANCE CONTRACT AND/OR SUIT
TIME PROVISIONS AGREED TO THE PARTIES SUBSEQUENT TO THE LOSS

Plaintiff John DeRossi's claims that are asserted in Counts First, Second, Fourth, Fifth, Seventh and Eighth of his Amended Complaint, dated May 28, 2003, must be dismissed by this Court, as they are time barred by the limitations period contained in the Marine Insurance Policy which is the subject of this litigation, or by subsequent agreements entered into by the parties.

It is axiomatic that the terms and conditions of a marine insurance contract are governed by contract.

Plaintiff John DeRossi's claim that the limitation period that his agent, Kevin Walsh, Esq., agreed to, or those contained in the marine insurance contract, do not apply is meritless.

11

Simply put, the limitation periods agreed to by the parties, with a cut-off date selected by plaintiff John DeRossi's counsel, cannot now result in defendant's being equitably estopped from relying on a date proffered by plaintiff John DeRossi himself.

Because the Marine Insurance Policy, itself, specifically limits any amendments to the policy to be in writing, the only amendments to the marine insurance contract herein must be in writing. Thus, only those agreements reduced to writing, by the parties, can amend or alter the terms of the marine insurance contract.

By letter dated March 28, 2001, Kevin Walsh, Esq. confirmed and agreed to an extension of the one-year statute of limitations period contained in the marine insurance contract; i.e., one year from the date of loss, or October 5, 2000, to July 31, 2001. (See Exhibit B – highlighting ours) Thereafter, and in order to comply with the terms and conditions of the marine insurance policy, the undersigned sent a letter, dated April 6, 2001, assenting to and confirming that any suit against National Loss Management, National Marine Underwriters, and Hanover Insurance Company must be brought on or before July 31, 2001, or was time barred. (See Exhibit C – highlighting ours) Additionally, the undersigned's April 6, 2001 correspondence made it patently clear that, "No additional extensions will be granted beyond the July 31, 2001 deadline."

Thus, the parties contracted and agreed to a July 31, 2001 limitations period which should be applied herein by this Court. Should the Court, for some reason, find that the July 31, 2001 deadline does not apply, then it must apply the October 5, 2000 deadline, as the marine insurance contract does not allow for amendments to the marine insurance policy, save those that are consummated in writing. See: Chambers v. Manning, 169 F.R.D. 5 (D.Conn. 1996); Bernard v. Bernard, 214 Conn. 99 (1990); Ubysz v. DiPietro, 185 Conn. 47 (1981); Sturman v. Socha, 191 Conn. 1 (1983)

Moreover, in the spirit of moving the appraisal process forward, defendant National Loss Management, through its counsel, notified Kevin P. Walsh, Esq., by telefax dated February 28, 2001, that it had identified an appraiser. (See Exhibit D) By letter, dated March 31, 2001, defendant National Loss Management's counsel again called on plaintiff John DeRossi's counsel, Kevin P. Walsh, Esq., to exchange appraiser names. (See Exhibit E) Thereafter, on April 6, 2001, when plaintiff John DeRossi had failed to advise if he had even appointed an appraiser, the undersigned unilaterally disclosed the name of defendant's appraiser and provided a draft letter to be sent to the appraisers. (See Exhibit F) Unfortunately, plaintiff John DeRossi's counsel, Kevin P. Walsh, Esq., ignored defendant's repeated calls to move the appraisal process forward to completion. Finally, on June 14, 2001, (See Exhibit G) in an apparent attempt to cover his untimeliness, plaintiff John DeRossi's counsel Kevin P. Walsh, Esq. identified the name of plaintiff John DeRossi's appraiser. Unfortunately, by that late date; i.e., 16 days short of the agreed-to date to have the appraisal completed, it was impossible to complete any appraisal, as it would have been impossible for the two appraisers to have selected a third, view the evidence, meet, and render an opinion. Additionally, Kevin P. Walsh, Esq. was still arguing over the form of letter to be sent to the appraisers.[2]

Simply put, it was counsel for plaintiff John DeRossi's untimeliness that caused the agreed-to appraisal process to fail. Additionally, thereafter, plaintiff John DeRossi's counsel failed to place the matter in suit by July 31, 2001, as agreed, and plaintiff John DeRossi's claims became time-barred.

---

[2] The Court should note that counsel for plaintiff John DeRossi was also untimely in responding to defendant's October 1, 2002 Motion to Dismiss; i.e., John DeRossi filed a Motion to Extend Time Nunc Pro Tunc on November 11, 2002.

## POINT VII

### NO CAUSE OF ACTION LIES AGAINST DEFENDANTS NATIONAL MARINE UNDERWRITERS, INC. AND HANOVER INSURANCE COMPANY, AS THEY HAD NO INVOLVEMENT IN THE ACTIONS COMPLAINED OF BY PLAINTIFF JOHN DeROSSI, THUS THEY SHOULD BE DISMISSED AS DEFENDANTS IN THIS ACTION

No viable cause of action lies against defendants National Marine Underwriters, Inc. and Hanover Insurance Company because neither had any involvement in the adjustment of the claims submitted in this matter. As demonstrated by the 28 U.S.C. § 1746 Statement of Richard P. Logan, and the exhibits attached thereto, only defendant National Loss Management was responsible for the adjustment of claims on policies written on defendant Hanover Insurance Company paper by its broker, National Marine Underwriters, Inc.

Simply put, Hanover Insurance Company did not write any marine insurance coverage but through its broker National Marine Underwriters, Inc., pursuant to a contract that existed between the two parties.

## POINT VIII

### DEFENDANTS, NATIONAL LOSS MANAGEMENT, NATIONAL MARINE UNDERWRITERS, INC., AND HANOVER INSURANCE COMPANY'S EVIDENCE IS SUFFICIENT TO SUPPORT THEIR MOTION FOR SUMMARY JUDGMENT; THE STANDARDS FOR SUMMARY JUDGMENT HAVE BEEN MET

The Supreme Court in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986) stated that:

> Rule 56 must be construed with due regard not only for the rights of person asserting claims and defenses that are adequately based in fact to have these claims tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the rule, prior to trial, that the claims have no factual basis.

14

Where, as here, no genuine issue of material fact exists, the trial courts have been encouraged by the Supreme Court to grant summary judgment motions in favor of the defendants. Further, the Supreme Court in <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986), stated that:

> ". . . to deny summary judgment there must be no genuine issue of material fact," noted that "[f]actual disputes that are irrelevant or unnecessary will not be counted." (emphasis in original)

Defendants National Loss Management, National Marine Underwriters, Inc., and Hanover Insurance Company, have clearly introduced sufficient evidence to support their motion for summary judgment. As the Court stated in <u>DeLong Corporation v. Raymond International, Inc.</u>, 622 F.2d 1135, 1141-42 (3d Cir. 1980):

> ... we do not read Fed.R.Civ.P. 56 as requiring that the movant in a motion for summary judgment introduce evidence supporting its position beyond any doubt. Rather, it is sufficient if it submits evidentiary material which indicates there is "no genuine issue of material fact."

In the case of <u>Knight v. U.S. Fire Insurance Co.</u>, 804 F.2d 9, 11-12 (2d Cir. 1986), <u>cert.</u> <u>denied</u>, 480 U.S. 932 (1987), the Court of Appeals for the Second Circuit provided instructive comment concerning the use of Rule 56:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, ___ U.S. ___, 106 S.Ct. 2505, 2509-11, 91 L.Ed.2d 202 (1986); <u>Eastway Constr. Corp. v. City of New York</u>, 762 F.2d 243, 249 (2d Cir. 1985).

> Before rendering summary judgment, a court must also determine that any unresolved issues are not material to the outcome of the litigation. "<u>[T]he mere existence of factual issues – where those issues are not material to the claims before the court – will not suffice to defeat a motion for summary judgment.</u>" <u>Quarles v.</u> <u>General Motors Corp.</u>, 758 F.2d 839, 840 (2d Cir. 1983) (per curiam). Nor may a party rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. Id. Similarly, a "bare assertion that

15

evidence to support a fanciful allegation lies within the exclusive control of the defendants, and can be obtained only through discover, is not sufficient to defeat a motion for summary judgment." Eastway, 762 F.2d at 251.

*   *   *

As the Supreme Court recently explained: <u>Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action.</u>" (emphasis ours)

CONCLUSION

Based on the foregoing, all of plaintiff John DeRossi's claims which are based on the CUIPA and CUTPA must be stricken, as they are preempted by federal maritime law and/or are not cognizable under Connecticut law. Additionally, the other claims of plaintiff John DeRossi must be dismissed as time barred pursuant to the provisions of the marine insurance contract and/or the written amendments made thereto by the parties.

Dated: Easton, Connecticut
February 24, 2004

LOVEJOY & ASSOCIATES
Attorneys for Defendants,
National Loss Management,
National Marine Underwriters, Inc.
and Hanover Insurance Company

By: _____
Frederick A. Lovejoy (CT 03121)
P.O. Box 56
Easton, Connecticut 06612
(203) 459-9941
(203) 459-9943 (telefax)

DeRossiMotSumJudg.doc

16