UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DeROSSI, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3-02-cv-247 (JCH) |
| v. | : | |
| | : | |
| NATIONAL LOSS MANAGEMENT, | : | |
| NATIONAL MARINE UNDERWRITERS, INC., | : | |
| and HANOVER INSURANCE COMPANY | : | |
|     Defendants | : | JULY 29, 2004 |

**RULING ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 22]**

      The plaintiff, John DeRossi ("DeRossi"), brings this action against National Loss Management ("Management"), National Marine Underwriters ("Underwriters"), and Hanover Insurance Company ("Hanover") for breach of a marine insurance contract. DeRossi alleges that the conduct of the defendants constitutes bad faith and is a breach of the implied duty of good faith owed by the defendant. DeRossi also asserts that the actions of Underwriters and Hanover were in violation of Connecticut Unfair Trade Practices Act ("CUTPA"), §42a et seq. and the Connecticut Unfair Insurance Practices Act ("CUIPA") §38a-815. DeRossi is seeking (1) money damages, (2) attorneys fees and/or punitive damages pursuant to the CUTPA and CUIPA claims. (3) and an order tolling any applicable limitation period pending arbitration, and (4) such other and equitable relief as the court may determine.

      Defendants seek summary judgment on all claims asserted. Specifically, defendants argue that federal admiralty law preempts DeRossi's state claims; that punitive damages are not recoverable in admiralty; that DeRossi may not bring a private

-1-

cause of action pursuant to CUIPA; that DeRossi's CUTPA and CUIPA claims fail to meet the requisites established by Connecticut Case Law; that DeRossi's claims based on equitable estoppel and bad faith are barred by the time provisions agreed to by the parties; and that no cause of action exists against defendants Underwriters and Hanover on the grounds that they had no involvement in the actions complained of by DeRossi.

## I.   STATEMENT OF FACTS[1]

On or about June 10, 1999, Underwriters issued a marine insurance contract to DeRossi.  On or about September 21, 1999, DeRossi's vessel sustained damage when it became submerged in the waters of Lake George as a result of Hurricane Floyd.

DeRossi submitted a claim relating to the sinking of the vessel, and Management paid DeRossi the sum of $10,465.51 on behalf of Hanover.  DeRossi had the vessel repaired, and some 8 months later, in June 2000, after it was returned to him and after his first opportunity to use the vessel, he discovered engine damage possibly associated with the sinking of the vessel for which he submitted a claim.  DeRossi

---

[1] Local Rule 56(a)(1) states that "all material facts set forth in [56(a)(1) Statement] will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)(2)."  Although counsel for DeRossi submitted a Local Rule 56(a)(2) statement denying or admitting the facts asserted by the moving party, his statement is incomplete.  The Local Rule 56(a)(2) statement must include a separate section entitled "Disputed Issues of Material Fact", setting forth each issue of material fact as to which it is contended there is a genuine issue to be tried.  Furthermore, each denial in a Local Rule 56(a)(2) Statement must be followed by a specific citation to the affidavit of a witness competent to testify at trial or to evidence that would be admissible in trial.  Local Rule 56(a)(3).  DeRossi's opposition papers fail to comply with these provisions, and thus this court concludes that there are no genuine issues of material fact with regard to his denials which fail to abide by the Local Rules.

submitted an additional claim for $10,000.  Management's surveyor and DeRossi's mechanic disagreed as to the cause of the damage.  Thereafter, pursuant to the insurance policy, Management and DeRossi each selected a competent and disinterested appraiser.  The appraisers were to pick a third person to settle any differences by majority rule. Defendants' appraiser refused the suggestions of DeRossi's appraiser and refused to specify the names of any alternative appraisers.  As a result of the impasse, DeRossi retained counsel to represent him.

On or about February 14, 2001, counsel for the two parties agreed to make another effort at resolving the dispute through the appraisal process.  On February 28, 2001, counsel for defendants notified counsel for DeRossi that they had selected another appraiser.

DeRossi's boat was sunk on September 21, 1999.  In June 2000, DeRossi contacted Management with the additional claim in dispute here.  On March 28, 2001, plaintiff's counsel sent counsel for the defendants a letter.  Defs['] Mot. Summ. J., Ex. B [Dkt. No. 23].  In that letter, plaintiff's counsel wrote:

> [W]e both agreed that this matter should proceed to be arbitrated, consistent with the original intention of the parties.  However, I indicated that in order for the matter to proceed to arbitration, I need to have you agree on behalf of your principals to a tolling of this case.  This is not to say that the insurance carrier would waive its one year limitation, rather given the request and intention to proceed with arbitration, that the parties mutually agree that the one-year limitations period shall be tolled until a fixed date.  Specifically, I recommend that the fixed date be July 1, 2001....Provided we can agree of [sic] a tolling date of July 1, 2001, the Sheriff will refrain from making service.  I am

>further prepared to agree that we will initiate suit within thirty
>days of July 1, 2001 in the even [sic] the arbitration has not
>been finalized.

Id.

In the defendants' response to DeRossi, dated April 6, 2001, they agreed "that in exchange for the defendants...agreeing to 'toll' the statute of limitations period contained in the insurance contract, [DeRossi] has agreed that all claims, of whatever nature, will be commenced by July 31, 2001 or are time barred." Id., Ex. C (emphasis added).

Counsel for defendants, having not received the name of DeRossi's substitute appraiser, unilaterally disclosed the name of their appraiser. Thereafter on June 14, 2001, DeRossi appointed his appraiser. The parties were unable to agree on the notice to be sent to the appraisers and the scope of the appraisal. DeRossi did not file suit by the July 31, 2001 deadline. As of December, 2001, the parties were still unable to come to any agreement regarding the notice to be sent to the appraisers, and DeRossi commenced this action on January 9, 2002 in state court. Defendants removed the case to this court on February 8, 2002.

## II.  DISCUSSION

### A.  Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280,

-4-

286 (2d Cir. 2002). The burden of showing that no genuine factual dispute exists rests upon the moving party. Marvel Characters, Inc., 310 F.3d at 286. Once a moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present such evidence that would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Lucente v. International Business Machines Corp., 310 F.3d 243, 253 (2d Cir. 2002). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Lucente, 310 F.3d at 254. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-248 (emphasis in original). The substantive law of the claim governs materiality, as "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant

or unnecessary will not be counted." Id. at 248.

### B. Statute of Limitations

The marine insurance policy entered into by both parties on June 10, 1999 provides, in part, that "No legal action may be brought against us unless there has been full compliance with all terms of this policy and the action is started within one year after the accident causing the loss." Defs[']. 56(a)(1) Statement of Undisputed Facts, Exhibit 1 [Dkt. No. 24] (emphasis added). Furthermore, the policy requires that no changes may be made to the policy unless they are in writing. Id.

Counsel for DeRossi, rightfully anticipated the possibility that arbitration would not be finalized by the July 31, 2001 deadline. Plaintiff had agreed to initiate suit by July 31, 2001, if arbitration had not been completed by that time. Arbitration was not completed, and plaintiff failed to initiate suit by the date agreed to by both parties in writing. Plaintiff cannot now say that he did not bring action by July 31, 2001, because of the inaction of the defendants when he had anticipated the arbitration not being finalized by that date, agreed to bring suit in the event that arbitration was not complete by that date, and recommended the tolling of the limitations period to that specific date.

### C. Equitable Estoppel

It is uncontroverted that the plaintiff did not file his suit by July 31, 2001. Plaintiff argues that the statute of limitations was tolled by the doctrine of equitable estoppel. The Second Circuit Court of Appeals has held that, "a defendant may be equitably estopped from asserting the statute of limitations 'in cases where the plaintiff knew of

the existence of his cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit.'" Wall, et al. v. Construction & General Laborers Union, 224 F.3d 168, 175-176 (2000) (quoting Buttry v. General Signal Corp., 68 F.3d 1488, 1493 (2d Cir. 1995)).  Judge Winter, in his opinion, cautioned that in order to trigger the doctrine of equitable estoppel, a plaintiff "must show that (1) 'the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it'; and (2) 'the plaintiff reasonably relied on that misrepresentation to his detriment.'" Id. (quoting Buttry, 68 F.3d at 1493); see also Kavowras v. New York Times Co., 328 F.3d 50 (2d. Cir. 2003).  DeRossi, however, fails to meet this standard required for equitable estoppel to apply.

In this case, the inaction of defendants' counsel does not constitute a "definite misrepresentation of fact."  As of the date that the plaintiff had named an arbitrator, June 14, 2001, there were over two weeks' time to conduct arbitration.  Although counsel for the defendants took no action until after July 1, 2001, counsel for plaintiff had agreed that, in the event the arbitration was not finalized he would bring suit no later than July 31, 2001.  Inaction by defendants does not constitute a "definite misrepresentation." Wall, 224 F.3d at 175.  Thus, plaintiff cannot satisfy the elements of equitable estoppel.

### D. CUTPA and CUIPA Claims[2]

#### 1. *No Private Right of Action Exists Under CUIPA.*

Courts have repeatedly held that no private right of action exists under CUIPA. In Lander v. Hartford Life & Annuity Insurance Co., 251 F.3d 101 (2d. Cir. 2001) the court held that "[m]ost federal and Connecticut state courts have determined that the Connecticut Unfair Insurance Practices Act ... does not provide a private cause of action." Id. at 118-19.  Furthermore, "[t]he Connecticut Supreme Court characterized CUIPA as a penal statute requiring a construction 'limiting rather than expanding civil liability'--further supporting the proposition that no private cause of action is available under the statute." Glynn v. Bankers Life and Casualty Co., 297 F.Supp.2d 424, 431(D. Conn. 2003).

In accordance with the Lander and Glynn courts, this court holds that DeRossi has no private right of action under Connecticut Unfair Insurance Practices Act.

#### 2. *CUTPA is Preempted by Admiralty Law*

Where a conflict arises between a state statute and judicially-established admiralty law, the state law must yield to admiralty law. See Wilburn Boat Co. v. Fireman's Insurance Co., 348 U.S. 310, 314 (1955).  The damage provisions in CUTPA allowing for attorney's fees and punitive damages conflict with established admiralty law

---

[2] Given the broad language of the limitations clause, i.e., "[a]ll claims", it is the court's view that the parties' agreement to toll the limitations period to July 31, 2001 applies to all claims, including CUTPA and CUIPA claims.  However, the defendants' motion for summary judgment does not press this issue.

and are therefore preempted.

A plaintiff may bring a private cause of action under CUTPA on an insurance contract if the misconduct of the underwriter amounts to a violation of CUIPA. Mead v. Burns, 199 Conn. 651, 663 (1986). CUTPA permits the award of attorney's fees and punitive damages upon proof of an unfair trade practice. C.G.S. § 42-110g. The Connecticut Supreme Court has defined unfair practice as one that (1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, or (3) causes substantial injury to consumers. Willow Springs Condominium Association, Inc. v. Seventh BRT Development Corp., 245 Conn. 1, 43 (1998).

Admiralty law, however, applies the "American Rule" as to attorney's fees. Norwalk Cove Marina, Inc. V. S/V Odysseus, 90 F.Supp.2d 190, 193 (D.Conn 2000)(quoting Gradmann & Holler GmbH v. Continental Lines, S.A., 679 F.2d 272, 273-274 (1st Cir. 1982). This rule provides that, "[t]he award of fees and expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith" in insurance actions. American National Fire insurance Co. v. Kenealy, 72 F.3d 264, 270 (2d Cir. 1995)(quoting Ingersoll Milling Co. V. M/V Bodena, 829 F.2d 293, 309 (2d Cir. 1987); see Norwalk Cove Marina, Inc., 90 F.Supp.2d at 193. The Kenealy court reiterated its holding in Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 309 (2d Cir. 1987), that there is a federal admiralty rule prohibiting attorney's fees in the broadest of terms which now must be followed instead of state law. Kenealy, 72 F.3d at 270. Although other circuits have rejected the Kenealy analysis, this court is bound

by Second Circuit precedent.

Courts have spoken on the issue of punitive damage claims in admiralty law. A court may award punitive damages where the defendant's actions were intentional, deliberate, grossly negligent, or so wanton and reckless as to demonstrate a conscious disregard for the right of others. See Norwalk Cove Marina, Inc., 90 F.Supp.2d at 193 and cases cited therein. CUTPA also does not meet the standards established by admiralty law for the award of punitive damages. Id. at 193.

In line with the Second Circuit's holding in Wilburn Boat, because the damages provisions of CUTPA regarding attorney's fees and punitive damages are not consistent with the standards established in admiralty law, the CUTPA claim is preempted. See Norwalk Cove Marina, Inc., 90 F.Supp.2d at 193 (since CUTPA conflicts with admiralty law, the CUTPA claim will be dismissed).

**CONCLUSION**

For the reasons stated above, defendant's motion for summary judgment [Dkt. No. 22] is GRANTED. The Clerk is hereby directed to close this case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 29th day of July, 2004.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge